**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARY REILLY, individually and on behalf of all others similarly situated, <br> Plaintiff, <br><br> v. <br><br> DEVA CONCEPTS, LLC, d/b/a DevaCurl <br><br> Defendant. | CASE NO.  1:20-cv-2156 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Mary Reilly, individually and on behalf of all others similarly situated, alleges the following against Defendant Deva Concepts, LLC ("Defendant" or the "Company"), based on personal knowledge of Plaintiff, and as to all other matters, based upon, *inter alia*, Defendant's statements, publicly disseminated news reports, and the investigation conducted by and through Plaintiff's undersigned counsel.

## SUMMARY OF CASE

1.      This is a class action brought by Plaintiff on behalf of consumers who purchased Defendant's DevaCurl No-Poo Original non-lathering conditioning cleanser, DevaCurl One Condition Original hair-conditioner, DevaCurl Light Defining Gel, DevaCurl Low-Poo Original cleanser ("Low-Poo Original"), DevaCurl Low-Poo Delight cleanser, DevaCurl No-Poo Decadence cleanser, DevaCurl One Condition® Delight hair-conditioner, DevaCurl One Condition Decadence hair-conditioner, Melt into Moisture Mask, Styling Cream, DevaCurl Leave-In Decadence conditioner, Super Stretch Coconut Curl Elongator, Wavemaker, and DevaCurl Ultra Defining Gel (collectively "the Products"). Plaintiff seeks damages and equitable remedies for herself and for

the Class and Subclass (defined below).

2.      Defendant manufactures hair care products. It produces and markets a range of products for cleaning, conditioning, and styling curly hair. Defendant sells to customers throughout the United States and Canada in part through retailers who sell cosmetics and hair care products.

3.      In response to the growing trend of using sulfate-free shampoos instead of sulfate shampoos that can potentially cause damage to hair, Defendant created an innovative new haircare category with the launch of DevaCurl No-Poo Original.

4.      In addition to DevaCurl No-Poo Original, Defendant formulated, manufactured, marketed and sold many accompanying products for the same purposes to consumers in this District and across the country, including conditioners and gels, including Low-Poo Original and One Condition Decadence.

5.      Defendant touted Low-Poo Original and the Products as "great to gently cleanse even fine-textured curls without stripping the natural oils they need to be shiny, bouncy and beautiful."

6.      Consumers seeking an alternative to traditional shampoo purchased the Products. Many consumers, used the Products, including Plaintiff who used Low-Poo Original and One Condition Decadence, as a complete shampoo replacement once or twice a week to cleanse hair rather than using traditional shampoo.

7.      Consumers pay a premium over the cost of traditional retail and salon shampoos for the Products, based upon the representations above.

8.      Despite Defendant's representations, which led many consumers across the United States to purchase and use the Products, use of the Products causes scalp irritation, excessive shedding, extreme hair loss, thinning, breakage, and/or balding during normal use by consumers.

Thousands of consumers have reported their hair falling out and scalp irritation shortly after or during use of the Products.

9.      Defendant provides no warning about these consequences, and in fact makes numerous assertions regarding the gentle and beneficial nature of the Products.

10.     For example, Defendant's website makes statements relating to its No-Poo Product such as "[t]raditional shampoo can be too harsh for curls. That's why we made No-Poo Original! The non-lathering formula with peppermint and grapeseed oil gently cleanses without stripping the natural oils your curls need." With regard to its One Condition® Original product, Defendant's website states "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!" These statements and others were and are false, deceptive, and misleading and have harmed Plaintiff and the Class.

11.     Defendant conceals and fails to disclose the defective nature of the Products by misleading consumers into believing that the hair loss and shedding caused by the Products is "normal" and "common," and not preventable.

12.     Defendant has knowledge and notice of the hair loss and scalp irritation caused by the Products.

13.     Beginning in February 2018, Defendant has received multiple FDA complaints of hair loss and scalp irritation.

14.     There have been hundreds of complaints posted on social media sites, including Facebook. Social media influencers have spread the word about the hair loss and scalp irritation caused by Defendant's Products. Major media outlets including the ABC television affiliate in New York City have broken the story.

15.     Defendant has explicitly acknowledged the reports of hair loss and scalp irritation associated with its products, going so far as to post a statement on its website, prominently featured with a link entitled "updates and resources for our deva community" in the top right corner of the website's homepage. Defendant claims that the Products "do not cause hair breakage", "do not cause hair loss" and are "proven to be non-irritating."

16.     Defendant also created the "Curl Council" to deal with the consumer backlash as a result of the issues alleged herein. The "Curl Council" is nothing more than 'window dressing' to address the Products' negative effects.

17.     Despite notice and knowledge of the problems caused by the Products, Defendant has not recalled the Products, has not provided any warnings of the known risks complained of herein, has denied that the Products cause the reported health issues, and has not offered its customers any compensation for their damages.

18.     Had Plaintiff and other Class Members known that the Products would cause scalp irritation, excessive shedding, extreme hair loss, thinning, breakage, and/or balding, they would not have purchased the Products.

19.     Plaintiff and each of the Class Members have been damaged and suffered an injury caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein by Defendant and seek compensatory damages and injunctive relief.

20.     Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

## JURISDICTION AND VENUE

21.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and the Class Action Fairness Act, 28 U.S.C. § 1332(d)).

22.    The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

23.    Personal jurisdiction is based on Defendant's regular and systematic contacts with the State of New York and places its products into the stream of commerce.

24.    Venue is proper under 28 U.S.C. § 1391 because Defendant's headquarters and principal place of business is in this District.

## PARTIES

25.    Plaintiff Mary Reilly is a resident of Vermont, who has purchased and used numerous Products within the relevant time period.

26.    Plaintiff purchased Products at retail stores located in New York and Vermont and online.

27.    Plaintiff stopped using the Products when she experienced problems surrounding its use.

28.    Defendant's principal place of business is 560 Broadway, Suite 206, New York, NY 10012.

## FACTUAL ALLEGATIONS

29.    At all relevant times, Defendant marketed the Low-Poo and One Condition Decadence Products through national marketing and advertising campaigns as being "Only the good stuff – Everything your curls need, and nothing they don't."

30.     Defendant's website provides a three-step process for using Low-Poo Original and the DevaCurl One Condition® Original conditioner. Step 1 is "Wet curls and apply a generous amount to your scalp, scrubbing in."

31.     Step 2 states, "Rinse thoroughly by scrubbing your scalp and letting the water move Low-Poo Original through your ends."

32.     Step 3 states, "Follow with One Condition® Original for additional moisture."

33.     However, despite following Defendant's three step process, Low-Poo Original causes users to sustain scalp irritation, excessive shedding, extreme hair loss, thinning, breakage, and/or balding during normal use. Users have hair fall out in varying degrees during and immediately after use. The scalp irritation, excessive shedding, extreme hair loss, thinning, breakage, and/or balding suffered by Plaintiff and Class Members can be extreme in certain instances and also embarrassing.

34.     The extreme hair loss suffered by Plaintiff and Class Members is not limited to Low-Poo Original. Many consumers, including Plaintiff, have experienced hair loss, "shedding" and/or "thinning" after using the Products. Some users have had hair fall out in "clumps" and have suffered extreme distress as a result.

35.     Defendant also states that shedding is normal; however, users have experienced scalp irritation, excessive shedding, extreme hair loss, thinning, breakage, and/or balding during normal use of the Products.  Further, consumers have also found that ceasing use of the Products improves these conditions.

36.     Consumers pay a premium for the Products, and pay substantially more for the Products than they would for other hair care products.

37.     Defendant misleads consumers into thinking they purchased a premium product with greater benefits than other hair care products.

38.     Consumers pay a premium for the Products because of the benefits Defendant claims they provide beyond normal hair care products. For example, Defendant claims that Low-Poo Original is "Sulfate Free," and that it is used to "gently cleanse," and that it comes with benefits such as the ability to keep hair from drying out. However, neither the Low-Poo Original's labeling or packaging, nor any other advertising from Defendant, warns users that it causes scalp irritation, excessive shedding, extreme hair loss, thinning, breakage, and/or balding during normal use.

39.     Nowhere on any of the labeling or packaging of the other Products does it state that scalp irritation, excessive shedding, extreme hair loss, thinning, breakage, and/or balding occurs from normal use of the Products.

40.     With regard to its One Condition® Original product, at all relevant times, Defendant has marketed this product through national marketing and advertising campaigns as a premium product that is "free of harsh ingredients" and made with "nourishing, hydrating ingredients."

41.     On Defendant's website, Defendant claims that shedding of hair is "normal". Defendant states that hair loss is more prevalent in curly-haired women because "Sadly, shedding is more common with curly-haired gals because we don't wash or brush our hair as often as our straight hair counter parts."

42.     The Products cause scalp irritation, excessive shedding, extreme hair loss, thinning, breakage, and/or balding. The hair loss is not *de minimis*—consumers who suffer hair loss often lose significant amounts of hair and the hair loss persists as long as the consumer uses the Products.

43.    Many consumers who suffered scalp irritation, excessive shedding, extreme hair loss, thinning, breakage, and/or balding from the Products saw their symptoms abate by discontinuing use of the Products.

44.    Every consumer who purchased the Products without the true facts about the Products and disclosure of the inherent risks prior to purchase was injured at the point of sale when, instead of obtaining safe, natural, proven, guaranteed to promote hair growth, strengthening, and conditioning cleanser, consumers obtained Defendant's unreasonably dangerous and defective Products. Consumers have been further injured by requiring expensive professional hair treatment and medical treatment because of injuries caused by the Products.

45.    By marketing, selling and distributing the Products to purchasers throughout the United States, Defendant made actionable statements that the Products were free of defects, safe, and fit for their ordinary intended use and purpose.

46.    By marketing, advertising, selling and distributing the Products to purchasers throughout the United States, Defendant made actionable statements that the ordinary use of the Products would not involve undisclosed safety risks.

47.    Defendant concealed what they knew or should have known about the safety risks resulting from the material defects in the Products.

48.    Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading and likely to mislead reasonable consumers. Alternatively, Defendant was reckless in not knowing that these representations were false and misleading at the time they were made.

49.    Defendant had and has exclusive access to data pertaining to the Products' defects that Plaintiff and Class Members could not and did not have.

8

50.     Failing to include scalp irritation, excessive shedding, extreme hair loss, thinning, breakage, and/or balding on the labeling, product packaging, and by misleading customers by stating that shedding is "normal," "common," and "non-preventable" are material misrepresentations for consumers of the Products.

51.     Defendant further misleads consumers into thinking they can and should use unlimited amounts of the Products, through statements such as "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"

52.     Plaintiff and the proposed Class all purchased the Products during the relevant time period and which caused scalp irritation, hair loss, balding, or otherwise failed to perform as they were intended, *i.e.*, promoting healthy hair.

53.     Plaintiff and Class Members were misled by Defendant's omissions and misrepresentations in respect to the Product. Plaintiff and Class Members would have purchased other hair care products if they had not been deceived by the misleading and deceptive marketing and/or labeling and packaging of the Products.

54.     The following are a sample of online complaints:

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on March 20, 2016, updated on December 4, 2019: "I started using DevaCurl No Poo and One Condition in early January and used it until about a week ago. My hair was gorgeous but I wasn't able to get my hair really clean and developed some crazy dandruff which I've NEVER had a problem with before. I also noticed that I was shedding more hair than I was used to and that my hair seemed to be thinning a little. The shedding seem to get worse and that is the main reason that I stopped using it. When I switched back to Ogx coconut curls I was no longer shedding like crazy. Has anyone else had either of these issues while on these products?"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on December 4, 2019: "I had long hair to my belly button and after switching everything to deva curl I was in denial of my hair loss until my hairdresser pointed out how my hair was shedding super bad and how it was thinking out.  It's been a couple months now and my hair is getting back to normal. Devacurl didn't work for me and now I'm dealing with the issues it caused. I would just cry because my hair

was falling out in big clumps!! Now I just use Olaplex for most my hair needs. Olaplex #3 has been helping with the bonding of my hair. I feel so sad you had to go through this as well."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November 7, 2019: "This is crazy reading these posts! I went "no poo" over 10 years ago and hit the curly girl method HARD! Used all DC products and my hair was ridiculously gorgeous. I'm a redhead and typically shed a lot so I didn't really think too much about it but I remember thinking damn this is a lot! My stylist at the time commented on increased shedding but just assumed it was normal. She started getting out an extra towel to wipe the hair off her hands after washing my hair!! Gradually my hair started feeling dry and brittle, especially after ArcAngel and whatever the deep conditioner is. I started using new products and once I got rid of all DC products my hair was soft and happy again. Lesson learned!

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September 12, 2019: "I am mind-blown at this thread. I was alwaysss the kid with hair so thick that hair stylists said something about it every time I had my hair cut. A year ago I noticed hair loss starting. And a year ago I started Deva Curl styling products. I don't use their hair washing products. In June, I got my first Deva cut and she told me I have thin hair, and that was crazy to hear. It's now to the point that I have super thin areas on each side of my forehead, which made me go to the doctor. I had my hormones checked and all kinds of other blood work done, and it's all normal. I put the thoughts together and realized the hair loss started the same time I started Deva products. Then I found this thread. I am switching ASAP. Please, if anyone knows of cruelty-free products that give poofy, frizzy, curly hair definition and frizz control, help a girl out!! and Deva Curl... thanks for that medical bill!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August 15, 2019: "I have had the exact same issues. When I started doing the curly girl process i lost a lost of hair, but I had not 'molted' for a while, so I wrote this off. I have continued to see molting and a lot of breakage as well, tho. The more concerning issue was the extreme itching and what was almost like flaky acne. Bumps on my scalp that hurt and itched. I have found that the Arc Angel gel is the worst offender and now that I have stopped using that it has gotten a lot better. The products make my hair look great, but I wish I knew what ingredient was causing this issue. Spent SO MUCH MONEY on these products and am not excited about buying more products that may have the same stuff in them that will cause the same issue."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on April 28, 2019: "Me too! I have been using the Devacurl no poo original and one condition since Christmas. I just recently had a deva cut and purchased the products recommended and I have been losing a lot of hair. My hair feels thinner, looks thinner, and my hair just is not the same."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on December 1, 2017: "I'm having the same experience with DevaCurl o Decadence. It does an incredible job of detangling but I'm losing my hair. The folks here saying this is about perception don't get it. I started using this about two years ago and wasn't attributing it to the product because it was happening before that - from my attempts to detangle it. The devacurl worked for awhile, but then recently, and particularly in the last few months, my hair has been coming out in small clumps, from the root whenever I use it. I notice it because I've been washing and conditioning more regularly for a newer style. It doesn't happen when I use other conditioners, and I know the difference because when I would go back to the Decadence (for the detangling) my hair would be coming out in clumps in my hands. Also, when so many people are saying the same thing, clearly there is an issue, so it's not just about our perception. I'm done with this product. If anyone has any detangling recommendations - not just products, but techniques too, I'm happy for them."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on October 17, 2019: "The same thing happened to me. Hair loss in Clumps, scalp irritation, and very noticeable loss in volume. I can see my scalp now. I feel like crying knowing that I have an entire box of products to throw away that cost me $100's. I'm terrified now of this happening with other "reputable" distributors. I can't believe this. It has really hit my self-esteem hard and my faith in curl brands."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February 2, 2017: "I have been using this for a few months and I have lost TONS of hair, I even went to get my hormones checked, they were on point!! I have lost so much it's noticeable and looking completely different including parting all over... very unhappy and nervous, I am going to stop using it and see if it make a difference!

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August 24, 2018: "My hair was so thick and it grew, I kid you not, nearly 3 inches a month. I measured. And I cut 6 inches off my very long hair to see if it would help curls form when I switched to Deva Curl. Well... after almost 2 months, my hair had gotten shorter. The breakage is horrible and it's falling out in clumps! Not just in the shower either! I don't dye my hair, I don't use any heat on it at all, and I don't use any product except the wave maker stuff from Deva Curl. So it had to be switching to Deva Curl.

I also only wash my hair once a week. So I know I'm not over washing it. I was also using the buildup buster every 2 washes.
I am nearly in tears from how much hair it caused me to lose.
I'm going back to Lush ASAP. I'll never switch from Lush again. No matter what hair products I use from there, my hair stays beautiful, thick, and fast growing! I had to get supplements just to get my hair to start growing again... unfortunately my nails were still growing fast and strong. So I'm having to trim them 3 times a

week.Ugh. Don't let anyone talk you into sticking with Deva Curl! If you get a feeling that it's messing your hair up, STOP! I wish I would have after hair started coming out the first shower... but I thought it was just because it wasn't as easy to work through my hair as my Lush products were. I'm heartbroken you guys."

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on December 2011: "A gal in my office and I are both losing handfuls of hair when using these products and I wasn't sure if it's the Deva products or the CG method in general causing the issue. I am a fine porous 3a / 3b and my friend has course 4a thick hair. Thanks!"

55.    Because of the pervasive complaints with respect to the Products, Defendant has knowledge of the alleged defects.

56.    In January, Defendant issued a public statement acknowledging the alleged defects, but refused to take responsibility for the problem and otherwise refused to cure the alleged defects and remedy consumers.

## CLASS ACTION ALLEGATIONS

57.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, including subsections (b)(2), (b)(3), and (c)(4), Plaintiff Mary Reilly, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of herself and on behalf of the proposed Classes:

> **Nationwide Class:** All persons in the United States who purchased DevaCurl Products and as a result suffered damages (the "Class").
>
> **New York Subclass**: All persons who purchased DevaCurl Products in New York and as a result suffered damages ("New York Subclass").

58.    Excluded from the Class are Defendants and any entities in which Defendants or their subsidiaries or affiliates have a controlling interest, and Defendants' officers, agents, and employees. Also excluded from the Class are the judge assigned to this action, Class Members of the judge's staff, and any member of the judge's immediate family.

59.    Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

60.     Numerosity: The Class Members of each Class are so numerous that joinder of all Class Members of any Class would be impracticable. Plaintiff reasonably believes that Class and Subclass Members each total well over 1,000 persons. The names and addresses of Class Members are identifiable through documents maintained by Defendant.

61.     Commonality and Predominance: This action involves common questions of law or fact, which predominate over any questions affecting individual Class Members, including:

  a.  Whether the Products are defective such that they cause hair loss, scalp irritation or balding;

  b.  Whether and when Defendant had exclusive knowledge that the Products are defective but failed to disclose the defect to the public;

  c.  Whether the Products provide the benefits claimed by Defendant on the labeling, packaging, and/or in the course of its marketing;

  d.  Whether Defendant's conduct violated the applicable state consumer fraud claims alleged herein;

  e.  Whether Defendant's conduct constituted a breach of applicable warranties;

  f.  Whether Defendant's acts and omissions make it liable to Plaintiff and Class Members for negligence and strict products liability;

  g.  Whether Defendant engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by objectively misleading Plaintiff and putative Class Members;

  h.  Whether Defendant's conduct, as alleged herein, was likely to mislead a reasonable consumer;

i.  Whether Defendant's statements, concealments and omissions regarding the Products were material, in that a reasonable consumer could consider them important in purchasing the Products;

j.  Whether, as a result of Defendant's omissions and/or misrepresentations of material facts, Plaintiff and Class Members have suffered an ascertainable loss of monies and/or property and/or value; and

k.  Whether Plaintiff and Class Members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

62.  Typicality: Plaintiff's claims are typical of the claims of the other Class Members because, among other things, Plaintiff and the other Class Members were injured through the substantially uniform misconduct by Defendant. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiff.

63.  Plaintiff's claims and those of other Class Members arise from the same operative facts and are based on the same legal theories.

64.  Adequacy of Representation: Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class Members she seeks to represent.

65.  Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously.

66.  The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.

67.     Superiority: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

68.     Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

69.     Likewise, particular issues under Rule 23(c)(4) of the Federal Rules of Civil Procedure are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to, those set forth in paragraph 60 above, which are incorporated by reference.

## COUNT 1
## VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301 *et seq.*
#### (On Behalf of the Nationwide Class)

70.    Plaintiff brings this count on behalf of herself and the Class, and repeats and re-alleges all previous paragraphs, as if fully included herein.

71.    The Products are consumer products, as defined in 15 U.S.C. § 2301(1).

72.    Plaintiff and Class Members are consumers as defined in 15 U.S.C. § 2301(3), and are persons entitled under the applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

73.    Plaintiff purchased Products costing more than $5 and their individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

74.    Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

75.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), provides a cause of action for any consumer, who is damaged by the failure of a warrantor to comply with a written or implied warranty.

76.    Defendant made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiff, Class and Subclass Members and Defendant.

77.    Defendant's written affirmations of fact, promises and/or descriptions as alleged––including promises that the Products promote healthy hair, are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicons to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," and that they give "your curls what they need and nothing they don't," and are "great to gently cleanse

even fine-textured curls without stripping the natural oils they need to be shiny, bouncy and beautiful."" — are each a "written warranty."

78.    The affirmations of fact, promises, and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

79.    Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price. The complete satisfaction guarantee constitutes a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

80.    Further, Defendant provided Plaintiff and Class Members with an implied warranty of merchantability in connection with the purchase of the Products that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

81.    As a part of the implied warranty of merchantability, Defendant warranted to Plaintiff and Class Members, that the Products were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

82.    Defendant breached all applicable warranties, as described in more detail above, and is therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(1). The Products suffer from latent and/or inherent defects that cause substantial hair loss, hair breakage, and scalp

irritation, rendering the Products unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

83.     Any effort to limit the implied warranties in a manner that would exclude coverage of the Products is unconscionable, and any such effort to disclaim, or otherwise limit, for the defective Products is null and void. Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant, on the one hand, and Plaintiff and the other Class Members, on the other.

84.     Moreover, any limitations on the warranties are substantively unconscionable. Following early reports of injuries caused by the Products, including multiple complaints to the FDA beginning in February 2018, Defendant knew that the Products were defective and would continue to pose safety risks. Defendant failed to disclose the product defect to Plaintiff and the Class Members. Thus, Defendants enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

85.     Plaintiff and each of the other Nationwide Class Members have had sufficient direct dealings with Defendant to establish privity of contract.  Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Defendant and its third-party retailers, and specifically of the implied warranties. Third-party retailers, such as Ulta Beauty, were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided with the Products; the warranty agreements were designed for and intended to benefit consumers.

86.     All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiff and others in terms of paying for the goods at issue.

87.     Pursuant to 15 U.S.C. § 2310(e), Plaintiff and the Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff and the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

88.     Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here.

89.     Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiff and the Class, including without limitation, multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiff and the Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products.

90.     Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff and the Nationwide Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

91.     While notice is not required (for the reasons set forth above), on March 10, 2020, Plaintiff sent a letter to Defendant giving notice of its violations of its express and implied warranties and demanding that Defendant correct such violations.

92.     Defendant's breaches of warranty have caused Plaintiff and the other Nationwide Class Members to suffer injuries, paying for defective Products, and entering into transactions they would not have entered into at all, or not for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and the Nationwide Class have suffered

damages and continue to suffer damages, including economic damages in terms of the cost of the Products and the cost of efforts to mitigate the damages caused thereby.

93.     Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Nationwide Class Members are also entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Nationwide Class Members in connection with the commencement and prosecution of this action.

**COUNT 2**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class)**

94.     Plaintiff brings this count on behalf of herself and the Class and repeats and re-alleges each and every prior paragraph as if fully included herein.

95.     Defendant sold and Plaintiff purchased the Products from authorized resellers of Defendant's products.

96.     Defendant represented in its marketing, advertising, and promotion of the Products that the Products promote healthy hair, and are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicons to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world" and that they are "great to gently cleanse even fine-textured curls without stripping the natural oils they need to be shiny, bouncy and beautiful."

97.     Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from

us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.

98.    Defendant made these representations to specifically induce Plaintiff and Class Members to purchase the Products.

99.    Defendant's representations that the Products constituted part of the basis of the bargain between Defendant and Plaintiff (and Class Members).

100.    Each of these representations and the complete satisfaction guarantee constitutes an express written warranty.

101.    Defendant breached its express warranties because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

102.    The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiff and Class Members.

103.    The defect was undiscoverable by Plaintiff and the Class Members at the time of purchase of the Products.

104.    Plaintiff and the Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff and the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

105.    Affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile.

106.    Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiff and the Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiff and the Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products.

107.    Under these circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff and the Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

108.    While notice is not required (for the reasons set forth above), on March 10, 2020, Plaintiff sent a letter to Defendant giving notice of its violations of its express and implied warranties and demanding that Defendant correct such violations

109.    As a direct and proximate result of Defendant's breaches of these express warranties, Plaintiff and Class Members have been damaged because they did not receive the products as specifically warranted by Defendant.

110.    Plaintiff also paid a premium for Defendant's Products that did not conform to Defendant's express warranties.

### COUNT 3
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Nationwide Class)

111.    Plaintiff brings this count on behalf of herself and the Class and repeats and re-alleges each and every prior paragraph as if fully included herein.

112.    UCC § 2-314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." UCC § 2-314 has been adopted in New York, N.Y. UCC Law §§ 2-314 and 2A-212, and in 35 other states.\

113.    As set forth above, Plaintiff has standing to pursue this claim as she has suffered injury in fact and have lost money or property because of Defendant's actions.

114.    Defendant is a "merchant" within the meaning of UCC § 2-314 because it deals in the sale of the Products and holds itself out as "having knowledge or skill peculiar to" haircare products such as the Products at issue.

115.    Defendant sold and Plaintiff purchased the Products from authorized resellers of Defendant's products.

116.    By placing such products into the stream of commerce, and by N.Y. UCC Law §§ 2-314 and 2A-212, Defendant impliedly warranted to Plaintiff and Class Members that the Products were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

117.    Defendant breached the implied warranty of merchantability because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

118.    The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiff and Class Members.

119.    The defect was undiscoverable by Plaintiff and the Class Members at the time of purchase of the Products.

120.    Defendant has misled consumers into believing the Products were used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding was "common," "normal," and "not preventable." Defendant took advantage of Plaintiff's and the Class Members' trust and confidence in its brand, and deceptively sold the Products, knowing that they caused hair loss, shedding, and scalp irritation.

121.    Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiff and the Class Members, not distributors who sold the Products. Moreover, Defendant exercises substantial control over which outlets can carry and sell the Products, which are the same places that Plaintiff purchased them. In addition, Defendant's warranties are in no way designed to apply to the distributors that purchase the Products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels and packaging, which Defendant knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchases the Products.

122.    Plaintiff and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid a premium for the Products that they would not have otherwise paid. Plaintiff and the Classes also did not receive the value of the Product they paid for—the Products are worthless or worth far less than Defendant represents due to the latent and/or inherent defect that causes hair damage, hair loss and/or scalp irritation.

123.    Plaintiff and the Class Members have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

124.    Plaintiff and Class Members are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

125.    As a result of the breach of the implied warranty of merchantability, Plaintiff and Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

### COUNT 4
### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class)**

126.    Plaintiff brings this count on behalf of herself and the Class and repeats and re-alleges each and every prior paragraph as if fully included herein.

127.    According to Defendant's website, New York law applies to all claims.

128.    Plaintiff conferred benefits on Defendant by purchasing the Products at a premium price.

129.    Defendant has knowledge of such benefits.

130.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Products, because the Defendant will obtain the benefits conferred by Plaintiff and the Class Members without adequately compensating Plaintiff and the Class Members. Defendant failed to adequately compensate the Plaintiff for the benefits conferred by providing the Low-Poo and One Condition Decadence Products without those products having the characteristics and benefits promised.

131.    Retention of those moneys under these circumstances is unjust and inequitable because (a) Defendant falsely and misleadingly represented that the Products promoted healthy hair, were used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients,"

and that hair loss and shedding was "common," "normal," and "not preventable." (b) Plaintiff paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because of the latent and/or inherent defect that causes hair loss and scalp irritation.

132.    These actions resulted in injuries to Plaintiff and Class Members because they would not have purchased (or paid a price premium) for the Products had they known of the latent and/or inherent defect that causes hair damage, hair loss and/or scalp irritation in the Products.

133.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, and because equity and good conscience requires restitution, Defendant must pay restitution to Plaintiff and Class Members for its unjust enrichment, as ordered by the Court.

**COUNT 5**
**NEGLIGENCE – FAILURE TO WARN**
**(On Behalf of the Nationwide Class)**

134.    Plaintiff brings this count on behalf of herself and the Nationwide Class and repeats and re-alleges each and every prior paragraph as if fully included herein.

135.    According to Defendant's website, New York law applies to all claims.

136.    At all times referenced herein, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling the Products to Plaintiff and the Class.

137.    At all times material hereto, the use of the Products in a manner that was intended and/or reasonably foreseeable by Defendant involved substantial risk of hair loss and scalp irritation.

138.    At all times the risk of substantial hair loss and scalp irritation was known or knowable by Defendant, in light of the generally recognized and prevailing knowledge available at the time of manufacture and design, as described herein.

139.    Defendant, as the developer, manufacturer, distributor and/or seller of the Products, had a duty to warn Plaintiff and the Class of all dangers associated with the intended use.

140.    After receiving multiple complaints of hair loss and scalp irritation, including multiple adverse event reports to the FDA, and after dozens (if not hundreds) of online postings reporting hair loss and scalp irritation after using the Products, a duty arose to provide a warning to consumers that use of the Products could result in hair loss or scalp irritation.

141.    Defendant was negligent and breached its duty of care by negligently failing to give adequate warnings to purchasers and users of the Products, including Plaintiff and the Class, about the risks, potential dangers and defective condition of the Products.

142.    Defendant was negligent and breached its duty of care by negligently blaming other risk factors for hair loss, by telling consumers that hair loss and shedding was "common," "normal," and "not preventable," thereby concealing and failing to warn purchasers and users of the Products, including Plaintiff and the Class, about the risks, potential dangers and defective condition of the Products.

143.    Defendant knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using the Products as described herein, and knew that Plaintiff and Class Members could not reasonably be aware of those risks. Defendant failed to exercise reasonable care in providing the Class with adequate warnings.

144.    As a direct and proximate result of Defendant's failure to adequately warn consumers that use of the Products could cause injuries such as hair loss, balding and/or scalp irritation, Plaintiff and the Class have suffered damages as set forth herein.

**COUNT 6**
**NEGLIGENCE – FAILURE TO TEST**
**(On Behalf of the Nationwide Class)**

145.    Plaintiff brings this count on behalf of herself and the Class and repeats and re-alleges each and every prior paragraph as if fully included herein.

146.    According to Defendant's website, New York law applies to all claims.

147.    Defendant did not perform adequate testing on the Products, which were defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied and/or sold to Plaintiff and the Class.

148.    Adequate testing would have revealed the serious deficiencies in the Products in that it would have revealed the substantial hair loss and scalp irritation occasioned by use of the Products.

149.    Defendant had, and continues to have, a duty to exercise reasonable care to properly design—including the duty to test—the Products before introducing them into the stream of commerce.

150.    Defendant breached these duties by failing to exercise ordinary care in the design and testing of the Products, which it introduced into the stream of commerce, because Defendants knew or should have known the Products could cause substantial hair loss and scalp irritation.

151.    Defendant knew or reasonably should have known that Class Members such as Plaintiff would suffer economic damages or injury and/or be at an increased risk of suffering

damage and injury, as a result of its failure to exercise ordinary care in the design of the Products by failing to conduct appropriate testing.

152.    By reason of the foregoing, Plaintiff and the Class experienced and/or are at risk of experiencing damage and injury.

153.    As a direct and proximate result of Defendants' failure to test the Products designed, formulated, manufactured, inspected, distributed, marketed, warranted, advertised, supplied and/or sold by the Defendant, Plaintiff and the Class have suffered damages as described above.

## COUNT 7
## VIOLATION OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT
### New York Gen. Bus. Law § 349 *et seq.*
### (On behalf of the New York Subclass)

154.    Plaintiff brings this count on behalf of herself and the New York Subclass and repeats and re-alleges each and every prior paragraph as if fully included herein.

155.    The New York Deceptive Acts and Practices Act makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

156.    Defendant's deceptive acts and practices include:

   a.    Knowingly designing, developing, manufacturing, advertising, and selling its Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

   b.    Marketing and selling Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

     c.    Making affirmative public representations about the alleged benefits of the Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

     d.    Concealing material information from consumers regarding the true nature of the defects in the Products in order to impact consumer purchasing behavior.

157.    Defendant violated N.Y. Gen. Bus. Law § 349's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Defendant's Products.

158.    As alleged more fully herein, Defendant's marketing and sale of the Products, and more specifically its failure to inform consumers of the health and safety risks inherent in the Products, violated N.Y. Gen. Bus. Law § 349. As alleged herein, Defendant continues to misrepresent the Products' abilities and continues to deny that the Products pose health and safety risks, Defendant has not recalled its Products nor provided any remedial efforts including a warning disclosing their possible risks, and Defendant's conduct is ongoing and continues to this date.

159.    Defendant violated N.Y. Gen. Bus. Law § 349's prohibition against unfair conduct by failing to inform its customers about the Products' abilities and their potential health and safety risks; engaging in a pattern or practice of concealing those facts and continuing to sell those the Products despite its knowledge that they are misrepresented and carry health and safety risks (including the risks of hair damage, hair loss, excessive shedding, and/or scalp irritation) - thereby depriving customers of the value of the Products as represented. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefit. Specifically, the health and safety risks

were outweighed by Defendant's profit motive. Defendant engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers with full information about Defendant's Products, including the known risks and potential side effects of use, prior to purchase).

160.    Defendant engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the abilities of the Products and their defects to avoid damage to their sales or reputation. Defendant withheld critical and material information from Plaintiff and New York Subclass Members, competitors, and the marketplace, all to Defendant's unfair competitive advantage.

161.    Defendant's business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, New York Subclass Members into purchasing Defendant's Products when those Products were misrepresented and defective with health and safety risks and otherwise did not perform as advertised.

162.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

163.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and New York Subclass Members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

164.    Defendant recklessly disregarded Plaintiff and New York Subclass Class Members' rights. Defendant's knowledge of the Products' false claims and health and safety risks put it on notice that the Products were not as it advertised.

31

165.    Plaintiff and the New York State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, statutory damages, punitive damages, and any other just and proper relief available under the New York Deceptive Acts and Practices Act.

### COUNT 8
### FALSE ADVERTISING
### New York Gen. Bus. Law § 350 *et seq.*
### (On Behalf of the New York Subclass)

166.    Plaintiff brings this count on behalf of herself and the New York Subclass and repeats and re-alleges each and every prior paragraph as if fully included herein.

167.    The New York False Advertising Act makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of ... representations [made] with respect to the commodity ...."

168.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive because Defendant has failed to disclose the true nature of its Products.

169.    Defendant failed to instigate a public information campaign to alert consumers of the defects and, instead, continues to misrepresent the true nature of Defendant's Products, continuing to deceive consumers.

170.    Defendant continues to misrepresent to consumers that its Products are capable of certain benefits without disclosing health and safety risks.

171.    Had Defendant disclosed those issues, rather than falsely advertising Defendant's Products' abilities, consumers would have not purchased the Products, and would not have paid an inflated price for them.

172.    In making and disseminating the statements alleged herein, Defendant knew, or should have known, its representations, advertisements, and statements were untrue and misleading in violation of N.Y. Gen. Bus. Law § 350 *et seq*. Plaintiff and other New York Subclass Members based their purchasing decisions on Defendant's omitted material facts. Defendants' revenues attributable to Products sold in those false and misleading advertisements amount to hundreds of millions of dollars.

173.    Plaintiff and New York Subclass Members were injured in fact and lost money and property as a result.

174.    Defendant's misrepresentations and non-disclosures of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of N.Y. Gen. Bus. Law § 350 *et seq*.

175.    Because of Defendant's wrongful conduct, Plaintiff and the New York Subclass Members lost money. Plaintiff and the New York Subclass Members are therefore entitled to restitution as appropriate for this cause of action.

176.    Pursuant to N.Y. Gen. Bus. Law § 350, Plaintiff and the New York Subclass Members seek injunctive relief, as well as monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 each for New York Subclass Member.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek the following relief:

a.  An order certifying the Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass, and naming Plaintiff's attorneys as Class Counsel;

b.  An order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c.  An order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pled or as the Court may deem proper; and

h.  For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

DATED: March 10, 2020

By: _Sona R Shah_

Robin F. Zwerling (RZ 6736)
Robert S. Schachter (RS 7243)
Dan Drachler (DD 1526)
Sona R. Shah (SS 4712)
**ZWERLING, SCHACHTER &
ZWERLING, LLP**
41 Madison Avenue, 32nd Floor
New York, NY 10010
Tel: (212) 223-3900
Fax: (212) 371-5969
ddrachler@zsz.com
rschachter@zsz.com
sshah@zsz.com

-and-

1904 Third Avenue, Suite 1030
Seattle, WA 98101
Tel: (206) 223-2053
Fax: (206) 343-9636

*Counsel for Plaintiff and the Proposed Class*